And the next case up is Pratt v. Geico. We have Ms. Gunn for the appellant and Mr. Thompson for the appellee. Ms. Gunn, if you're ready to proceed, please begin. Good morning, Your Honors. May it please the Court. My name is Tracy Gunn. I represent the appellant, Ambar Pratt, in this appeal. We are appealing a summary judgment in favor of Geico in this insurance bad faith case. The district court ruled that the consent judgment in this case was not an excess judgment and that was based almost entirely on this court's decision in Cawthorn. Our argument is simple and straightforward. The consent judgment is a judgment and it exceeds the policy limits. And under Florida law, that qualifies as an excess judgment. It is true that without more, the insurance entry into a consent judgment normally does not support a bad faith claim, but that's not because of some fiction that it's not a judgment and it's not an excess of the policy. It's because entering into the consent judgment when the insurance being defended is a violation of policy conditions. But those conditions can be waived and that's exactly what happened in this case. Our argument essentially is twofold, Your Honor. First, this is an excess judgment. And secondly, an excess judgment is not always required. The panel in Cawthorn referred to this as the excess judgment rule. But if you look at the Florida Supreme Court cases, including Pereira, I think the more accurate analysis is that it's a causation rule. What the Florida courts would require is that the insured be caused damage by the insurance company's bad faith. All that's required is causation of damages. And in the Jennings case and Pereira, the Florida Supreme Court indicated that a consent judgment can suffice in that regard. The list of functional equivalents provided in the Pereira case is not exhaustive, but the Cawthorn court indicated that it would be. How would you describe the new category of functional equivalents that you're asking us to establish? Um, first, Your Honor, we're not asking you to establish a new category. I want to make that clear. We are arguing first that this is in fact an excess judgment. But secondly, this is a because it is a judgment and it does exceed the policy limits. And as all the Florida Supreme Court cases have defined, that is an excess judgment. The Cawthorn court did indicate that it would require a verdict, but that is not required in any of the Florida case law. That's just was created by the panel in this, by this court in Cawthorn. It's not, it's not not required by any of the decisions either, is it? We don't have a, we don't have a spot on my Florida appellate court that fits these facts the way we would like to have one either way, do we? Right, right, exactly, Your Honor. I think the close. So why shouldn't we certify this issue to the Florida Supreme Court? I think that is definitely a valid option, Your Honor. If this court were to not agree that this qualifies as an excess judgment and were to be looking as Judge Brandt indicated for a new category, um, a functional equivalent, Pereira indicate that there may be other categories. This court should not foreclose that in contravention of the Florida Supreme Court and certification would be appropriate. However, that's the typical answer I get when I ask about whether we should certify a question. Well, if you're not going to rule in my favor certified, but if you are, there's no need for cert. You know, and honestly, Your Honor, I think the Cawthorn panel decision, um, although I would like to take that position here, the Cawthorn panel decision has caused enough confusion with some, some broad language in that that's not consistent with Florida law that I think this court has a number of appeals right now, including two today and some others that we're aware of, um, that there is a valid reason for certification, um, to establish exactly what Florida law would require. In answer to your question, though, about is there a case? Um, I think the closest thing is the Rosen versus FIGA case, which is a Florida Supreme Court case involving a consent judgment. The insurance company was not a party to the consent judgment. The court noted that the insurance company did read it, sort of participated in the negotiations of it the way that the insurance company did here the way that the insurance company did not in Cawthorn. So there is a narrow bandwidth of facts. If this court were to limit Cawthorn to its facts, I don't think this court needs to find that Cawthorn is wrong on its facts, but just there's some broad statements in Cawthorn that it's our position not consistent with Florida law really on two issues. First, Cawthorn indicates that an excess judgment requires a verdict. And why did the Cawthorn panel say that? It cites a footnote from the Florida Supreme Court in Jennings. And it's our position that Jennings did not intend this in any way to limit an excess judgment to a verdict. In fact, Jennings was a consent judgment case. And the case that Jennings cited for that definition is McLeod was a verdict case, but also defined as many other Florida Supreme Court cases have an excess judgment is just a judgment that exceeds the policy limits. Cunningham, Cope, all of those cases, that's the definition that Florida applies. There is no case apart from Cawthorn, which has actually applied the requirement of a verdict to the facts as a case before it. Let me ask you a question. We were on summary judgment below. Yes, your court did not reach the issue of whether Geico had acted in bad faith. Yes, but we can affirm if the district court is right for any reason. Can we avoid any concern about what Florida Supreme Court may or might not say about this category of of the functional equivalent by saying it? Can we reach that if we say that Geico did not act in bad faith? Yes. This court does have discretion to do that. It's our position that the court should not, because this is not the narrow type of case where there's a firm and definite path. Right. But if we were going to say that Geico acted in bad faith, I think we would have to reach the issue that you're raising. But if we were to say that Geico, the evidence shows that Geico didn't act in bad faith, I don't know that we have to reach that issue. If this court were to say that as a matter of law, Geico did not act in bad faith, the court certainly in its discretion could affirm on that basis. Yes, your honor. Let me address that issue. This is a case where what Geico did, Geico presents this as a multiple claimants case and says there are all these claimants out there. We did a global tender. We did all the right things. The fact is, this really was not a multiple claimants case. Geico knew from the beginning that there was one person who was the most seriously injured, claimant number one, knew from the get-go, that's the testimony from Geico, that after the death case was settled, Ms. Pratt was the next claim that had to be settled to protect the insured. They refer in their brief to two other claimants that weren't in this vehicle, Ortiz and Richardson, and list them as, oh, there were all these people out there that had these claims and we didn't know what to do. Their claim file indicates they knew from the beginning that they were not injured. They didn't even open claim file for them. This is not truly a multiple claimants case. We know this because Geico within a very short period of time did decide to offer the policy limits to the next two most injured people, my client, Ms. Pratt and Jessica Hodgepore. There's no real dispute about that. What this really is, is a mistaken multiple insured case. We know in Florida law that there are special rules for multiple claimant cases and multiple insured cases, just like there are special rules for situations where there's catastrophic injury, clear liability, and not enough coverage to go around. You said it's a mistaken multiple claimant's case. No, it's a mistaken multiple insured's case, Your Honor. But your choice of words was mistaken. When you say mistaken, does that rule out bad faith? No, Your Honor, because Geico determined with no basis whatsoever, not a fair and honest mistake based on some misunderstanding of the facts, with no basis whatsoever, Geico was bound to determine to treat ATS, Mr. Eason's employer. This is a personal auto policy. They're insured Mr. Eason had his personal coverage. He was the only insured under this policy. Their obligation was to protect him. For reasons that Geico has never been able to explain, they decided to treat ATS as an additional insured. I'm sorry, counsel, that intrigued me. When I was reading the case, you didn't turn up any evidence in discovery indicating why they did that. No, Your Honor. Well, we did depose their claims, their corporate rep, and also the we wanted to settle. This was an awful case. We wanted to settle for everybody that could be liable. We knew ATS could be liable, and we treated them as an additional insured. Once we decided to do that, we didn't go back. I don't want to be cynical, but corporations generally don't do things out of the goodness of their heart. Did you rule out in discovery the possibility that We did, Your Honor. The policy is filed in the case. Who's an additional insured under the policy would be the named insured, Mr. Eason and his wife. Not ATS is the only question. Not ATS, Your Honor. The only people who could be additional insured are entities that could be liable for the named insured, but don't own the vehicle. ATS owned the vehicle. The opposite is true. Mr. Eason is an insured under the ATS policy, but ATS is not an insured under Mr. Eason's policy. What GEICO did is they insisted on getting a release for an entity, ATS, that's not an insured that had other money that they were willing to pay. Thank you, Ms. Gunn. I'm going to cut you off. You've exceeded your time, and I think you've answered Judge Carnes's question. Yes, Your Honor. All right, but you've reserved time in rebuttal. Mr. Thompson, please proceed. Good morning, Your Honor. My name is Jordan Thompson, and I represent GEICO. Before you get started, counsel, before it slips my mind, could you address the ATS issue, which has puzzled me? I don't understand. Yes, Your Honor. Why did GEICO insist, or at least proffer, in the release, proffer protection for ATS? Early on when GEICO received notice of this accident, it was 30 days after the accident occurred. GEICO begins investigating the accident. Under GEICO's policy, there's a determination of whether an insured is the name insured, and also whether someone that could be vicariously liable for the insured's action would be an insured under the policy. And the distinction is made whether the vehicle that's being operated is owned by that vicarious party or not owned by the vicarious party. So, for example, if the vicarious liable party is not an owner, the named insured and the vicarious liable party, under the terms of the GEICO policy, would be an insured under the policy. Early on during GEICO's investigation, it wasn't clear, and I don't believe it was confirmed, whether ATS specifically owned the vehicle. It was learned that ATS owned the vehicle, but GEICO initially investigated the claim, and based on that, made the decision, because of considering the injuries, the multiple claimants, and the minimal policy limits, to decide to try to settle all claims and present coverage or provide coverage to ATS. Subsequently, when it was determined that ATS was the owner of the vehicle, such that they would technically not be an insured under the policy, because of the policy and the decision was already made to provide coverage, GEICO, as testified by the corporate representative, was not going to withdraw. Where do we find that summary judgment record? It would be under the testimony that was submitted by, in response to GEICO's most of her summary judgment, related to the corporate rep testimony. I believe the testimony of the corporate rep. GEICO's corporate rep, yes, your honor. So, subsequently, and I think going to merits of the position that appellates have taken, GEICO offered to resolve the claim for the full policy limits with a proposed release. And I'm jumping ahead to the merits of the claim, but the issue is significant because there was no demand that was made by Ms. Pratt. She had terminated her counsel that had previously offered and made a demand on her behalf prior to the expiration of that demand period. GEICO had gotten extension for that demand in order to conduct the Global Settlement Conference. Thereafter, the demand was, or therefore, prior to that conference taking place, even though there was still time on it for GEICO to consider it, it was withdrawn. So, Ms. Pratt now has not made a demand. GEICO attends the Global Settlement Conference with Ms. Pratt's new attorney. Ms. Pratt's new attorney attends and participates in the Global Settlement Conference. GEICO makes the decision, based on all the information that it has at the Global Settlement Conference, to tender the full $25,000 BI policy limits to Ms. Pratt without receiving a demand from her new lawyer, without receiving any conditions of settlement. And in that, GEICO presents a proposed release, which is crystal clear that it was proposed. And on the proposed release, it did include ATS and Mr. Easton. GEICO got no response from Ms. Pratt. Ms. Pratt's lawyer ignored GEICO's request to resolve the case, ignored GEICO's request for to work with him with a modified release, essentially ignored and never rejected, never raised any objections as it relates to the release. And in fact, there's evidence in the record that contemporaneous after receiving GEICO's tender, Mr. Whalen engaged Mr. Gunn's office to essentially bring a lawsuit against Mr. Easton. And there's letters in the file where he says that they're returning the check because GEICO wanted a release of Mr. Easton, and they refused to do so. So, I think on the merits of this case, particularly with regard to the proposed release, there's a litany of cases that have been presented to this court. And in fact, this court has ruled in a binding published opinion in the Ares v. Progressive that presenting a proposed release in response to a demand, nonetheless, which didn't occur here, and the insurance company is willing to make modifications and willing to make changes to the release as a matter of law, is not bad fate. Now, going to the first issue, I think that the district court correctly applied this court's decision at Cawthorn. And I think that the representations that have been made with regard to the Cawthorn court decision did not make up this excess judgment rule or the excess judgment having to be the determination of a jury verdict or the alternatives, which are the functional equivalents out of whole cloth. The Cawthorn court relied on Florida Supreme Court precedence in the Jennings decision and in the Pereira decision. And what's significant is the reliance on the determination of whether an excess judgment for the purposes of bringing a bad faith claim is an excess judgment is based on the fact that the Florida Supreme Court has made the decision that that has to be the product of a jury verdict. And if you look at the Pereira case, the Pereira case was directly addressing the issue of whether a consent judgment or whether there's certain types of agreements that would classify as satisfying this excess judgment rule. And then if you look at the Florida Supreme Court's decision in Pereira, they specifically address and reject the argument. And this is where the Pereira court got the basis to say that the excess judgment must be the product of a jury verdict because they essentially rejected the argument. And I'll find it for your honor. I apologize. Yes. So the argument that was made in the Pereira court was that the excess judgment was a 10 million dollar consent judgment. During the litigation, one of the insurers that did not only had a million dollars in coverage and they were subsequently sued for bad faith and the 10 million dollar consent judgment was attempted to be used as to qualify as an excess judgment. And the Pereira court, the Florida Supreme Court expressly said, as we reject Pereira's argument that the four million dollars is in excess because the amount is in excess of the estate's primary policy limit. We have previously stated that in quote, excess judgment is defined as the difference between all available insurance coverage and the amount of the verdict recovered by the injured party. And what's significant here about the Florida Supreme Court's decision and quoting that language is they're citing Jennings and the footnote two in Jennings, which essentially says the same thing, which is what a hell it just argued to this court was that the Cawthorn court took out of context that that's not what the Florida Supreme Court meant. I think the fair reading of Cawthorn shows that the Cawthorn court was relying on the Florida Supreme Court's decision in Pereira and also the Pereira decision, which came out after the Jennings decision is the decision that held that in the context of a bad faith action, that the judgment has to be the product of a jury verdict or there has to be a functional equivalent. And that brings us to the issues in this case that where the district court found that this consent agreement was not an excess judgment because it wasn't the result of a jury verdict. And it also wasn't the functional equivalent because the functional equivalents that were enumerated by the court in Pereira, who was specifically addressing the issue of what type of agreements would satisfy the damages requirement to proceed in a third party bad faith action, address the issues of a Cunningham agreement, a Koblenz agreement and issues related to equitable subrogation, particularly, for example, in cases where with an excess insurer. And it's undisputed based on the material facts that were submitted to the district court. And none of those functional equivalents apply here. First, this is not a Koblenz agreement, because Geico expressly told the insurer that they would continue to defend them. They never withdrew the defense. Yeah, but the Florida Supreme Court said those weren't exclusive. Your Honor, that is correct. The Florida Supreme Court said they weren't exclusive, but they said they were addressing the alternatives that were relevant to the facts of the Pereira case, which the facts of the Pereira case and what they were addressing were instances of what type of agreements or consent judgments would satisfy. And I think what the appellants are arguing and the basis, for example, a Koblenz agreement is the insurer fails to defend. And therefore, the insurer is going to be essentially punished for its failure to defend. And what the courts that have addressed this issue subsequent to Cawthorn, for example, the Schultz court, and even the Pratt court and other courts have basically said what the argument that is being presented would essentially render Koblenz agreements meaningless. Because if the basis for a Koblenz agreement is that the insurer failed to defend, well, in the context of where the insurer doesn't fail to defend, you're still going to hold them responsible for an agreement that they didn't agree to. You basically render Koblenz meaningless and you render the rationale of Koblenz meaningless and you basically make them one and the same. And I think that's where the footnote in Cawthorn is important because Cawthorn addressed this issue and said, well, this type of agreement, we don't believe the Florida Supreme Court or Florida courts would endorse. And that's particularly because Florida courts in Pereira went through extensive discussions of what type of agreements would apply. And they said- Did Geico know about this agreement? Geico was aware of the agreement and Geico, same factual scenario in Cawthorn, Geico advised the insurer, the insurer's attorney, that Geico would not agree to allow the insurer to enter into extra contractual issues, but they would allow the insurer at the discretion with him and his counsel, if they believed that that was in his best interest, to enter into the consent judgment. So they agreed to waive policy defenses. And I think that's where the argument by the appellants, which are conflating whether Geico is agreeing to comply with this policy, that Geico agreeing to comply with this policy and agreeing not to raise policy defenses is somehow an agreement that Geico is agreeing to be bound by any matters related to extra contractual issues. Given that- I'm having some odd feedback. Given that Florida public policy seems to encourage settlements, why shouldn't we consider that perhaps the Florida Supreme Court would think that it was appropriate for a claimant in a case like this to mitigate their damages by the court? Florida Supreme Court has said that consent judgments are a valid basis or valid vehicles for parties to the tort litigation to resolve the judgment short of trial. The issue here is whether agreeing to that consent judgment can turn around and be a basis as damages to support a third party bad faith action. Could Geico have stopped? Goodness. Could Geico have stood in the way of this consent judgment had it wished to? The answer to the question is Geico could have made a decision subsequent to raise policy defenses and deny coverage and basically say, we're no longer going to indemnify you and we're no longer going to defend you. And that's the policy defenses. But Geico doesn't control the decisions and the legal judgment made by the defense counsel. And I think that's the argument that has been made that, well, that's Geico's appointed counsel. And I think that argument is rejected by Cawthorn that the fact that Geico doesn't control the decisions made by defense counsel with their client. So if the client wanted to do that, no, Geico couldn't tell him not to. Now Geico would have the option and say that was a breach of the policy subsequent and then deny the defense, withdraw the defense and not pay policy limits. But like the adjuster did in this case, if you look at the letter responding to it, Geico advises, we've tendered the limits. We've tried to resolve this case for the limits. We only have $25,000. You've rejected that or Mr. Pratt has rejected that. We will continue to offer the limits and we will continue to defend you, but we are not going to agree to any extra contractual issues or allow you to bind us to any extra contractual issue. And I think all the cases, particularly the underlying Cawthorn case and all the cases subsequent and every one of those cases, the insurance company didn't raise policy defenses. Geico expressly said, we will agree not to, but in subsequent actions, the Cawthorn court, the issue, the argument was this isn't an excess judgment or it's functional equivalent. There was never policy defenses raised. So I think the fact that Geico waived this policy defense is basically immaterial. And I think if you look at the Jennings decision and even Pereira, the Jennings decision specifically talks about the Cunningham agreement. And it basically says in Cunningham, we simply approved a procedure in which the parties could avoid the time and expense of going through trial and to obtain a final judgment. And following that procedure, the parties agree in the court recognized that a stipulated final judgment has the same force and effect as a final judgment reached through the usual judicial labor of trial when the parties agree to it, that it shall. And I think that's Jennings, I think may expand Cunningham to the point of if the parties agree. And then obviously in a Cunningham agreement, the insurance company is a party to that agreement or contract. The court went on to say in Jennings that this is precisely what occurred here. The stipulation expressly stated that it shall serve as the functional equivalent of an excess judgment. So the parties in Jennings and then even what the Cunningham agreement contemplates or the functional equivalent that has been expressed as an exception to the excess judgment rule contemplates where all the parties agree, which includes the insurer, expressly agree that our alternative agreement, which may include a consent judgment, which may include trying to bad faith case first, shall be deemed a functional equivalent. And I think for that reason, the Cawthorn decision is well supported by Florida law. The district judge properly granted summary judgment on that basis and any alternative because the undisputed material facts established that Geico did not act in bad faith as a matter of law, we would ask this court affirmed summary judgment Geico's favor. Thank you. Before you leave, let me ask you, what about certification? I believe that certification is unnecessary because the Florida Supreme Court, I think through Pereira and even Jennings has already addressed this issue. The Florida Supreme Court's decision in Pereira was expressly dealing with a certified question from the 11th Circuit about what types of consent agreements would be deemed excess judgments for the purposes of a third party. But it didn't address these facts. I agree, Your Honor. It did not expressly these facts that are before the court. Thank you, Mr. Thompson. Miss Gunn, you have five minutes in with the ATS issue and the scope of the release. This is not a case where the insurance company just proposed a release and was willing to make changes to it. This is a case where the insurance company decided that ATS had to be released as part of the settlement with Miss Pratt. That is established in the deposition testimony of the Geico regional claims manager, Gary Gertz, which is at 41-2 of the record. And also in the claims file materials from January 10th, where there are notes about the settlement conference, where they said multiple times, I conveyed to the parties, we have to get a release for ATS. This file was placed on hold or on control by Geico because, quote, one of our insured was not going to get released. Geico knew that Miss Pratt's lawyers, both of them, Mr. Farrello first, and then Mr. Whalen, were not going to release ATS. And I think if the court looks at the claims notes and the deposition testimony, especially taking these evidence in the light most favorable to the non-moving party, Miss Pratt's court will find that this is not a situation where Geico was willing to come off of that position. The issue on the bad faith claim is that Geico required a release of someone that was not an insured in order to protect the person that was its insured. And unless the court has any questions about that, I'll move on to the consent judgment issue. The consent judgment cases, the significance of this is there is no Florida case actually requiring a verdict. The panel in Cawthorn said Florida requires a verdict and cited to some Florida case, a Florida case, that said defined an excess judgment with regard to a consent judgment case. In the... Judge Grant, you asked if Geico could have prevented the settlement. And the answer is yes. And in fact, the evidence is that my client did not enter into the settlement, would not enter into the settlement until she asked permission three times from Geico to do so. The issue about what is the functional equivalent, if this court were to find that somehow a judgment in excess of the policy limits is not an excess judgment, again, the list of functional equivalents, Jennings has said, is not exhaustive and the Cawthorn court treated it like it was. So the question is, how is this different than Cawthorn? And the way it's different than Cawthorn is because of the waiver of the policy conditions. And that makes it legally in the same position as the carriers in a Koblenz case. In a Koblenz case, the penalty for not defending is that the insurance company cannot assert the policy conditions and cannot claim that the insured violated the policy by entering a consent judgment. Here, the insurance company expressly waived the policy conditions that would have prevented the insured from entering into this consent judgment and did prevent her from doing so until she got permission. The Geico... But they almost had to do that, did they not? Otherwise... Absolutely. Well, so they waived them in the interest of having an attorney represent the insured who was loyal 100% to the insured. Isn't that why they waived the policy defenses? Well, Your Honor, they could have said, no, we're going to not allow you to enter into a consent judgment. We're going to continue to defend you and then take in the risk of what the burden was. And they didn't in this case because everybody knew... Yeah, but what they wanted to do was to give their insured the benefit of a neutral and to take certain positions in the case. Including enter into the stipulated judgment or stipulated agreement. Yes, Your Honor. And if they had objected to it, they wouldn't have left that to be determined by the insured and the insured's unconflicted attorney. Well, all that would have happened... Geico couldn't have prevented the insured from entering into it in the sense of never happening. But what Geico could have done was not waived its policy condition, said, no, we're not going to give permission. And then the insured could have decided with the benefit of their lawyer, either as appointed by Geico or personal counsel to go ahead and do it anyway. And then Geico could have asserted the breach of the policy conditions. I mean, that's the situation we would have been in. So we should punish them for waiving that policy condition? No, Your Honor. The issue is that they did, right? And so there's an agreement. Does that make this... Well, if we held that that's the decisive or a decisive factor here, insured companies would always object, would they not? No, Your Honor. I don't think so. Because in the same way that insurance companies agree to Cunningham agreements, it's in the best interest of... I mean, as you said, in the primary argument, we're going to assume that insurance companies like any other corporation... But if they objected to this stipulated agreement, wouldn't you then argue that they obstructed the settlement? They did so in bad faith? Well, Your Honor, this court and the Florida Supreme Court and Kripalak and Burgess have rejected the idea that not allowing the insured to enter into a consent judgment or a Cunningham agreement is itself bad faith. So I don't think that Geico would have been at risk of that argument. But you're asking us to, in this case, extend the definition of a covalence agreement and say, even when an insurance company is defending the insured, and then agrees to the settlement agreement, that they're going to be at risk for bad faith. So if we were to rule in your favor, no insurance company is ever going to agree to these excess settlements. I don't think that that's the case, Your Honor, respectfully, because we have the Cunningham procedure. And this case is not exactly like covalence because they're defending. It's not exactly like Cunningham because they weren't technically a party to the agreement. But it is more like that because they did read, they asked for a copy of the agreement. Our client asked for permission to enter into the agreement. They asked Geico to weigh the conditions. They didn't enter into it until Geico did that. What's the significance of that? That's materially different than what happened in Hawthorne. And we don't know what the Florida Supreme Court would say about that. I think if we look at the situations where the Florida Supreme Court has said it's sufficient to find causation under Pereira, applying a causation rule instead of narrowly an excess judgment rule or a verdict rule like the panel did in Hawthorne, and we know that list is not exhaustive. Is this close enough to those things? It's certainly different than Hawthorne because we do have the involvement of the insurance company through their giving permission to enter into this agreement and weighting the conditions. And again, would they have chosen to do that if it wasn't in their best interest? No, they wouldn't have. This was. Oh, sorry. Do you have a question? Yeah. You tell me why it was in their best interest if we adopt your position for an insurance company to ever agree to an excess judgment. Your Honor, because the fact is that the judgment is in the tort case, right? It's versus insured. And this case is about to go to trial. They're in the last stages of getting ready for trial. Everybody knows it's going to be more than a million dollars. So it's in their best interest whether at the end of the day they're paying it or not. This is not a determination that Geico is bound by this in the sense of having to pay it in bad faith. This is a determination that this is what the insured owes. And it could be in Geico's best interest to because it benefits the insured. But it wouldn't it wouldn't minimize the damage to the insured. You've got two parties who have every vested interest in raising the amount of the settlement agreement as high as they can possibly raise it. Your Honor, and that, of course, is a concern. It was the primary policy concern behind this court's decision in Cawthorn. And here we have evidence that the amount of the verdict was reasonable. And Geico did in its response letter to us asking for permission to enter into this say, we don't really think this is worth a million dollars. Their hired defense lawyer thinks that that was a low amount. But you're asking us not to make a rule that is contingency of the reasonableness of the settlement. You're asking us to make a rule that will apply regardless of the reasonableness. And then after that judgment is found to be binding on the insurance company, somebody can then argue, well, it was a little bit too much or it was way too much. But the insurance company gets bound by it regardless. Right? No, Your Honor, they're not bound by it unless there's a finding of bad faith in the insurance companies. Still, I would think like in Koblenz could raise the argument that it the amount was not reasonable here. I thought the argument here, and maybe I've over construed your argument, but I thought your argument was they waived any objection to this settlement agreement by saying, no, we don't have a problem. They waived the condition that would have precluded the insured from entering into the settlement agreement. I think this particular situation, it's pretty clear that Geico's reply said, we're not agreeing to the amount. And that's, they're free as they would be even in a Koblenz case where the insurance company doesn't defend to come in and say the amount was the result of fraud or collusion or bad faith. And so there is a protection already in place for situations like the court was concerned about in Cawthorn when the insurance company is not involved in the negotiations. And that's the distinction here. Here, Geico was specifically involved in the negotiations, asked to review the document, got a copy of the exact specific agreement. That's not being involved in the negotiations. I mean, are you telling me that Geico came in and said, whoa, that's way too much, a more reasonable amount would be $1.1 million. Did they do that? No, your honor. I mean, then they weren't involved in the negotiations. They did not have any back and forth about the amount. That's accurate. That's what negotiations are. Your honor, Geico did not propose an alternative amount for the judge. They weren't involved in the negotiations. They may have been informed about them, they did not negotiate this figure with the other two parties. As to the amount, that's correct, your honor. The other two parties, however, including Geico's appointed defense lawyer, which admittedly is acting on behalf of the insured, had evaluated the case and decided that this was a reasonable and in fact, relatively low amount for the value of the case. And of course, that evidence needs to be taken in the light, most favorable to Ms. Pratt as the nominating party. All right. Thank you, Ms. Gunn. And thanks to both of you, we have this case under submission and y'all don't need to go very far.